IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| JOSE GONZALEZ,<br><br>    **Plaintiff,**<br><br>v.<br><br>BOBBY LUMPKIN, JAMES BOWMAN, RICKY MINTON, OFFICER FNU COUSINS, CHRISTOPHER JAYNES, CECIL HASTY, PATRICK SHUMATE,<br><br>    **Defendants.** | § § § § § § § § § § § § §   CIVIL ACTION NO. 6:21-CV-00351-JCB |

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

Before the court is Defendant Bobby Lumpkin's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 62.) Plaintiff filed a response in opposition. (Doc. No. 67.) For the reasons stated herein, the court **RECOMMENDS** that Defendant's motion (Doc. No. 62) be **GRANTED.**

### BACKGROUND

On August 24, 2021, Plaintiff Jose Gonzalez filed this civil action pursuant to 42 U.S.C. § 1983 alleging violations of the Eighth Amendment against Defendants Bobby Lumpkin, the Texas Department of Criminal Justice ("TDCJ"), Warden James Bowman, Officer Ricky Minton, and Officer FNU Cousins. (Doc. No. 1.) Plaintiff filed an amended complaint on October 8, 2021 adding claims for violations of the Eighth Amendment against TDCJ official Cecil Hasty and Officer Patrick Shumate. (Doc. No. 18.) On January 6, 2022, Defendant TDCJ was dismissed from this action and the court granted Plaintiff leave to file a second amended complaint. (Doc. No. 41.)

1

On that same date, Plaintiff filed a second amended complaint (Doc. No. 42), which is the live pleading in this action.

Plaintiff's claims relate to an injury he received during his incarceration at the TDCJ Powledge Unit while working his job cleaning the metal fabrication machine. (Doc. No. 42, at ¶ 11.) Specifically, Plaintiff alleges that on October 14, 2019, while he was cleaning, the auger machine turned on, hooked his left rubber boot and pulled his leg into the machine. *Id.* at ¶¶ 48, 49. Plaintiff alleges that the machine lacked numerous safeguards that then allowed him to be pulled into the machine, crushing his tibia and fibula. *Id.* at ¶¶ 48–51. Plaintiff alleges that the machine jammed momentarily on a bone in his leg and he was able to pull what was left of his leg free. *Id.* at ¶ 53. Plaintiff alleges that he was unsupervised and despite his calls for help, no help came for more than 20 minutes. *Id.* at ¶ 54. Eventually, Plaintiff found help outside of the metal fabrication plant and was taken to an outside hospital. *Id.* at ¶¶ 54, 55. Plaintiff's leg was amputated below the knee on October 22, 2019. *Id.* at ¶ 56. Plaintiff alleges that Defendants were aware of the poorly maintained equipment and the danger of the auger machine and acted with a deliberate indifference to an unreasonable risk of serious injury to Plaintiff. *Id.* at ¶ 59.

Specifically, with respect to Defendant Lumpkin, Plaintiff alleges that Lumpkin, who was the senior TDCJ official at the TDCJ Department of Manufacturing, Agribusiness, and Logistics Division at the relevant time in 2019, was responsible for submitting proposed policies for the division, proposing and managing the division's budget, and supervising conduct of subordinates in that division. *Id.* at ¶¶ 21–23. Plaintiff alleges that, to save money, Defendant Lumpkin had unqualified TDCJ inmates design, construct, maintain, and attempt repairs of many of the machines in the metal fabrication plant, rather than buying commercially available machines and

having them assembled properly with all of their appropriate safety mechanisms. *Id.* at ¶ 29. Plaintiff alleges that Defendant Lumpkin, in his position, received all the reports of injury and safety hazards at the metal fabrication plant. *Id.* at ¶¶ 34–36. Plaintiff alleges that Defendant Lumpkin specifically knew that the Powledge Unit metal fabrication plant was dangerous to inmates. *Id.* at ¶ 40. Plaintiff alleges:

> …[D]espite actually knowing of his division's system-wide policy of cutting costs by using in-house design and construction of dangerous equipment like the auger – including by using ill-equipped forced labor by inmates – Lumpkin knowingly failed to prevent the danger to inmates like Gonzalez. For example, on information and belief, Lumpkin never tried to implement any minimally adequate safety standards or replace dangerous equipment with industry-standard equipment that had integral safety components. As a result of Lumpkin's decisions during his tenure as director of the Manufacturing, Agribusiness and Logistics Division, inmates like Gonzalez remained in serious danger from the equipment they were ordered to use.

*Id.* at ¶ 42.

Plaintiff alleges that Defendant Lumpkin was repeatedly informed of injuries and dangers from the type of machine that injured Plaintiff, but left his division's deficient policies in place. *Id.* at ¶ 45. As a result, Plaintiff alleges that Defendant Lumpkin established or maintained a condition of confinement that he knew would endanger Plaintiff and acted with a deliberate indifference to an unreasonable risk of serious injury to Plaintiff by failing to adopt a policy or mitigate the known danger to metal fabrication workers. *Id.* at ¶¶ 59–61.

On November 7, 2022, Defendants collectively filed an answer to Plaintiff's second amended complaint, denying the allegations, and asserting the affirmative defense of qualified immunity. (Doc. No. 56, at ¶ 77.) On December 15, 2022, Defendant Lumpkin filed a motion for judgment on the pleadings with respect to his affirmative defense of qualified immunity, along with a motion for a protective order. (Doc. Nos. 62, 63).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Motions to dismiss under Rule 12(b)(6) for failure to state a claim "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the court considers the remaining "well-pleaded factual allegations." *Id.* The court must accept as true all facts alleged in a plaintiff's complaint, and the court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted).

In other words, the court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'[D]etailed factual allegations'" are not required. *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nevertheless, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

4

*Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Defendant Lumpkin argues that he is entitled to judgment on the pleadings because Plaintiff has failed to overcome Defendant Lumpkin's presumptive entitlement to qualified immunity. (Doc. No. 62, at 2.) Specifically, Defendant Lumpkin argues that Plaintiff has failed to allege he violated a constitutional right as Defendant Lumpkin had no personal involvement in the alleged constitutional violation. *Id.* at 4–6. Defendant Lumpkin further argues that Plaintiff's allegations negate any claim that he was deliberately indifferent to a substantial risk of harm. *Id.* at 6–8. Finally, Defendant Lumpkin argues that it was not clearly established that Defendant Lumpkin's conduct violated Plaintiff's constitutional rights. *Id.* at 8–11. Plaintiff argues that Defendant Lumpkin had sufficient personal involvement because he was responsible for the policy decisions and omissions alleged. (Doc. No. 67, at 8–9.) Plaintiff contends that Defendant Lumpkin's policy decisions were the moving force behind the violation of his Eighth Amendment rights and that Defendant Lumpkin knew his policies posed a substantial risk of serious harm to inmates like Plaintiff. *Id.* at 9–12. Plaintiff further contends that Defendant Lumpkin disregarded risk thereby acting with deliberate indifference. *Id.* at 13. Plaintiff contends that Defendant Lumpkin's misconduct violated clearly established law. *Id.* at 13–17. In the alternative, Plaintiff requests an opportunity to amend his complaint. *Id.* at 17–19.

### I. Qualified Immunity

The doctrine of "qualified immunity" protects government officials from "liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 800

(1982). The qualified immunity inquiry determines whether a plaintiff has shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### a. Alleged Constitutional Violation

As discussed above, Plaintiff alleges that Defendant Lumpkin violated the Eighth Amendment by implementing or failing to implement policies that presented an excessive risk to the safety inmates due to the conditions of the Powledge Unit metal fabrication plant. (Doc. No. 42.)

To state a section 1983 claim, i.e., make out a violation of a constitutional right, against a defendant like Defendant Lumpkin in his individual capacity, a plaintiff must allege Defendant Lumpkin was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under section 1983, officials are not vicariously liable for conduct of those under their supervision, they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty., Miss*., 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'").

Here, Plaintiff's only allegations with respect to Defendant Lumpkin relate to his involvement with budgets and policies surrounding the metal fabrication plant in his role as senior

TDCJ official at the TDCJ Department of Manufacturing, Agribusiness, and Logistics Division. (Doc. No. 42.) Plaintiff alleges that Defendant Lumpkin had unqualified inmates design, construct, maintain, and attempt repairs of many of the machines in the metal fabrication plant, rather than buying commercially available machines and having them assembled properly with all of their appropriate safety mechanisms. *Id.* at ¶ 29. But even if Defendant Lumpkin did as alleged, Plaintiff's allegations do not state Defendant Lumpkin's personal involvement in the alleged incident on October 14, 2019.

With respect to policy implementation, Plaintiff alleges that Defendant Lumpkin was responsible for submitting policies for his division for final approval by TDCJ's executive director. *Id.* at ¶ 23. Specifically, Plaintiff alleges that Defendant Lumpkin was responsible for proposing and managing budgets and expenditures and supervising the conduct of subordinates. *Id.* But Plaintiff fails to identify any policy that was the moving force behind any alleged constitutional violation, let alone one that Defendant Lumpkin was responsible for. At best, Plaintiff's allegations suggest that Defendant Lumpkin was responsible for the budget, which may have included cost-cutting measures that posed a risk to worker safety in the metal fabrication plant. Plaintiff generically suggests that the division had deficient policies that were left in place, but does not allege that Defendant Lumpkin was personally responsible for these policies. *Id*. at ¶ 45. In fact, Plaintiff's allegations suggest that any alleged deficient policies were the "division's deficient policies," and that proposed policies were subject to approval by TDCJ's executive director. *Id.* at ¶¶ 23, 45. These allegations are too tenuous to suggest that Defendant Lumpkin therefore had personal involvement in any alleged Eighth Amendment violation based upon the workplace conditions of the metal fabrication plant.

Further, any failure to implement a policy by Defendant Lumpkin is not sufficiently alleged. As an initial matter, Plaintiff's allegations state that final approval for division policies was made by TDJC's executive director, not Defendant Lumpkin. *Id.* at ¶ 23. Plaintiff merely suggests that "Lumpkin never tried to implement any minimally adequate safety standards or replace dangerous equipment with industry-standard equipment that had integral safety components." *Id.* at ¶ 42. Even accepting that Defendant Lumpkin was responsible for safety implementation for machines in the metal fabrication plant, Plaintiff's allegations fail to elicit a policy that Defendant Lumpkin failed to adopt that would constitute a deprivation of a constitutional right.

By failing to allege Defendant Lumpkin was personally involved in the October 14, 2019 events or implemented an unconstitutional policy or custom with regard to the events or Plaintiff's claims, Plaintiff has failed to show a constitutional violation in support of his section 1983 claims against Defendant Lumpkin. In the absence of a constitutional violation, Defendant Lumpkin is entitled to judgment on the pleadings based on qualified immunity. Because the court has found that Defendant Lumpkin is entitled to qualified immunity based upon his lack of personal involvement, the court makes no further finding regarding deliberate indifference or clearly established law.

For these reasons, the court **RECOMMENDS** that Defendant Lumpkin's motion for judgment on the pleadings (Doc. No. 62) be **GRANTED**.

**II.    Amendment**

In his response to the motion, Plaintiff suggests that he should be allowed to amend his pleadings to include what he has learned in discovery and to complete outstanding discovery with respect to Defendant Lumpkin. (Doc. No. 67, at 18–19.) As an initial matter, the Fifth Circuit has

recently clarified the procedure for qualified immunity defenses. *See Carswell v. Camp* 54 F.4th 307 (5th Cir. 2022). In *Carswell*, the court held that when a defendant asserts qualified immunity in a motion to dismiss, the court must rule on the motion without permitting discovery into the issue. *Id.* at 311. The court should only permit discovery into qualified immunity if (1) Plaintiff alleges facts that, if true, would overcome qualified immunity and (2) the court is unable to determine whether Defendant is entitled to qualified immunity without clarification of the facts. *Id.* Even then, the discovery is limited in scope for the court to determine whether the defendant is entitled to qualified immunity. *Id.* Stated another way, if the pleadings are insufficient to overcome qualified immunity, the court must grant defendant's motion to dismiss without discovery into the issue. *Id.* at 312. Similarly, if the pleadings are sufficient to overcome qualified immunity, the court must deny the motion to dismiss without discovery. *Id.* Here, for the reasons discussed above, Plaintiff's pleadings were insufficient to overcome the defense of qualified immunity. Thus, the court finds no reason to conduct further discovery on the issue of qualified immunity.

Further, when considering whether to allow a party to amend its pleadings, it is well established that "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Rule 15(a) provides in relevant part that "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). Granting leave to amend, however, "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. Unit A July 1981)). The district court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party, and futility of amendment. *Id*. (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A complaint is futile when it fails to state a claim upon which relief could be granted. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Futility is evaluated with the same standard of legal sufficiency as applies to Rule 12(b)(6) motions to dismiss. *Id.*

Here, allowing amendment of Plaintiff's complaint would be extremely late. This case has been pending since August 24, 2021, and has been proceeding on a trial schedule for close to a year now. The court has already granted several deadline extensions in this case and moved the trial date back several months. (Doc. Nos. 51, 59, 66.) The dispositive motion deadline is currently set for February 13, 2023 and the fact discovery deadline has closed. (Doc. No. 66.) Although Defendant's motion for judgment on the pleadings was not brought until December 15, 2022, Plaintiff was aware of Defendant Lumpkin's assertion of the affirmative defense of qualified immunity as early as September 20, 2021. (Doc. No. 10.) Moreover, Plaintiff has already filed two amended complaints in this case. (Doc. Nos. 18, 42.) Even if the court found it appropriate to modify the schedule to allow amendment, the court finds that such an amendment would be futile.

Plaintiff's response does not attach any proposed amended complaint to suggest how Plaintiff would overcome the deficiencies identified herein. Plaintiff's response states that discovery has led to the following additional information:

> (1) Lumpkin personally approved the policy that gave Defendant Richard Minton responsibility for ensuring the safety of the metal fabrication plant for years leading up to this incident. (2) TDCJ had a written policy ostensibly requiring new or modified equipment to have hazards addressed with engineering controls, and this process was supposed to be reported to Lumpkin. (3) Throughout his entire tenure as plant manager, Minton never conducted that hazard mitigation. (4) Thus, Lumpkin was personally aware that his staff at the Powledge plant were not taking the basic safety step of implementing engineering controls for new or modified equipment—including inmate-designed equipment like the auger machine—before ordering inmates to use it. (5) Lumpkin's subordinates ordered the destruction of the auger machine without adequately preserving evidence of the machine or its components, despite the fact that litigation was anticipated at the time.

10

(Doc. No. 67, at 18.)

As discussed above, Plaintiff has not sufficiently alleged Defendant Lumpkin's personal involvement in any alleged constitutional violation. Plaintiff's contentions in the briefing, even if true, do not overcome the deficiencies identified herein. Of relevance, it appears that Plaintiff states that he has now learned that Defendant Lumpkin personally approved the policy that gave Defendant Richard Minton responsibility for ensuring the safety of the metal fabrication plant for years leading up to this incident. While this contention identifies a policy for which Defendant Lumpkin is alleged to be responsible, responsibility for approving a policy simply giving responsibility to a subordinate does not show how such a policy was the moving force behind any constitutional violation. Similarly, the existence of a written policy that required equipment reports to be submitted to Defendant Lumpkin does not establish his personal involvement. This information fails to provide the court with a sufficient basis to allow Plaintiff to amend his pleadings at this late stage. Even taking the allegations as true, the facts fail to establish a constitutional violation against Defendant Lumpkin.

## CONCLUSION

For these reasons, the court **RECOMMENDS** that Defendant Lumpkin's motion for judgment on the pleadings (Doc. No. 62) be **GRANTED** as Defendant Lumpkin is entitled to qualified immunity. As such, the court **RECOMMENDS** that the claims against Defendant Lumpkin be **DISMISSED** with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that

party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 9th day of January, 2023.**

*[signature: John D. Love]*

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE